1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RONALD E. WALTON,

11           Plaintiff,                No. CIV S-09-0479 GEB EFB P

12       vs.

13   J. BUTLER, et al.,

14           Defendants.          FINDINGS AND RECOMMENDATIONS

15   _____/

16       Plaintiff is a state prisoner proceeding without counsel in a civil rights action brought

17   under 42 U.S.C. § 1983.   This action proceeds on plaintiff's Eighth Amendment failure to

18   protect claims against defendants Orum, Butler, Shea, Clarey, Orrick, Sisto, and Guillory, and on

19   plaintiff's due process claim against defendant Majors.   Defendants move for summary

20   judgment.  For the following reasons, the court will recommend that the motion be granted.

21   **I.      Background**

22       Unless otherwise noted, the court finds that the following facts are not disputed by the

23   parties or following the court's review of the evidence submitted, have been determined to be

24   undisputed.

25       On November 20, 2007, defendant Butler served as the chairperson for plaintiff's Unit

26   Classification Committee meeting, where plaintiff's housing situation was reviewed.  Defs.'

1

Mot. for Summ. J. ("Defs.' MSJ"), Stmt. of Undisputed Facts in Supp. Thereof ("SUF") 1. Defendant Orum, a correctional counselor, was the recorder for this meeting.  SUF 2.  At the meeting, plaintiff's classification score was reduced from 29 to 27 points.  SUF 3.  Due to the reduction in plaintiff's points, the committee recommended that plaintiff be transferred from his current, level three housing in the dormitory in Gym H, to a level two housing unit.[1]  SUF 4.

The committee referred its recommendation for plaintiff's level two placement to the transferring authority for endorsement. SUF 5.  Transfers are made after the transferring authority approves the committee's recommendations and upon available bed space.  SUF 6. Plaintiff believes that no recommendation was ever made because he would have received an "endorsement chrono" with an explanation either rejecting or approving the recommendation. Pl.'s Opp'n, Pl.'s Stmt of Disputed Facts and Undisputed Facts ("Pl.'s SUF") ¶ 4.

Where an inmate has pending disciplinary charges, those charges shall be resolved before the inmate is transferred.  SUF 7.  While waiting to be transferred, plaintiff received a rules violation in December 2007, stemming from a physical altercation plaintiff had with another inmate.  SUF 8.  Plaintiff's transfer recommendation was postponed pending review of the disciplinary proceeding.  SUF 9.

Plaintiff contends he was not charged with disciplinary action, and submits evidence that he was the victim of an assault.  Pl.'s SUF ¶¶ 7, 10; Pl.'s Opp'n, Pl.'s Decl. ("Pl.'s Decl."), Ex. 4.  An "enemy chrono" signed by defendant Orrick states that on December 12, 2007, staff observed inmate Pearson hit plaintiff in the nose with a fist.  Pl.'s Decl., Ex. 4.  It notes that defendant Shea responded to the area and took Pearson into custody, and that plaintiff was escorted to the medical clinic for treatment.  *Id.*  The enemy chrono also indicates that Pearson was re-housed in an adjacent facility, and that Pearson would be listed in plaintiff's central file

---

[1] Aside from plaintiff's claims of overcrowding and dangerous conditions in the gym, where level three inmates were housed, the record does not reflect how level two housing differed from level three housing. *See* Pl.'s Opp'n., Mem. of P. & A. in Supp. Thereof ("Pl.'s P. & A.") at 1, 3, 5.

as an enemy.  *Id.*

Defendants Guillory and Orrick were sergeants in the facility where plaintiff's housing unit was located during all relevant times.  SUF 26.  They, along with defendants Shea, Clarey, Butler, and Orum declare that at no time before December 2007, did they have any indiction or suspicion that plaintiff's safety was in jeopardy.  SUF 23, 27; Defs.' MSJ, Butler Decl. ¶ 17, Orum Decl. ¶ 5.  Defendant Sisto, who was the Warden at California State Prison, Solano during the relevant time period, declares that he too, was not aware of any safety risk to plaintiff associated with plaintiff's housing in December 2007.  SUF 24, 25.

Plaintiff's rules violation was ultimately dismissed, but an inmate work stoppage created a state of emergency at California State Prison, Solano and further postponed plaintiff's transfer recommendation.  SUF 10.  According to plaintiff, the work stoppage lasted only three days in January of 2008 and should not have affected his transfer.  Pl.'s SUF 10; Pl.'s P. & A. at 7-8.

On April 1, 2008, plaintiff and another inmate (inmate Rash) were involved in a physical altercation.  SUF 11; Defs.' MSJ, Majors Decl., Ex. E.  Defendants Clarey and Shea, correctional officers in plaintiff's housing unit, responded to the altercation and restrained plaintiff and inmate Rasg.  SUF 11, 12; Pl.'s Decl., Ex. 2.  Plaintiff subsequently received a rules violation (S2-08-04-0771) for mutual combat.  SUF 12. Plaintiff contends he was the victim of assault and believes that because he had complained about his housing status, he was charged with mutual combat, and was not transferred out of level three housing.  Pl.'s SUF 11; Pl.'s P. & A. at 12.

Defendants Guillory, Orrick , Shea, Clarey, Butler, and Orum declare that at no time before April 2008, did they have any indiction or suspicion that plaintiff's safety was in jeopardy. SUF 23, 27; Defs.' MSJ, Butler Decl. ¶ 17, Orum Decl. ¶ 5.  Defendant Sisto also declares he was not aware of any safety risk to plaintiff associated with plaintiff's housing in April 2008.   SUF 24, 25.

////

1       Plaintiff declares he made Orrick and Shea aware that he had concerns for his safety, but

2   does not indicate when he did so or through what means, except for stating that Shea was the

3   reporting officer as to the December 12, 2007 assault.  Pl.'s Decl. ¶ 5.

4       Plaintiff declares that in February, March, and April of 2008, he had conversations with

5   defendants Orum and Butler, informing them that he "was having serious problems and

6   incompatibility issues with the prisoner [he] was living with . . . ."[2] *Id.* ¶ 2.  Plaintiff declares he

7   similarly informed defendants Clarey and Shea, but does not indicate when those conversations

8   too place.  *Id.*

9       Plaintiff declares that in February and March of 2008, he wrote letters to defendant Sisto

10  requesting that his housing status be changed. *Id.* ¶ 4, Ex. 3.

11      On February 4, 2008, plaintiff filed a citizen's complaint directed to Orum and Butler.

12  *Id.* ¶ 2, Ex. 1.  Plaintiff complained that because defendant Orum "fail[ed] to act," plaintiff was

13  "assaulted by a level 3 inmate" and that "Shea and John Doe c/o failed to protect [plaintiff]

14  resulting in an assault."  *Id.*  Plaintiff complained that he should have been housed in a level two

15  environment with other level two inmates.  *Id.*

16      On February 4, 2008, plaintiff also submitted an inmate appeal complaining that he was

17  still being housed in level three and was "under the gun with inmates with level 3 points or

18  more."  *Id.* ¶ 3, Ex. 2.  Plaintiff stated that if he remained with level three inmates, he "could be

19  forced to fight to protect [himself]." *Id.*, Ex. 2.  However, it appears that the latter statement was

20  not included with the February 4th appeal, but was instead included as part of plaintiff's March

21  21, 2008 appeal to the second level of review, following Butler's March 14, 2008 response to the

22  appeal at the first level of review.  *Id.*, Ex. 2.

23  ////

24  _____

25      [2] The parties do not state whether inmate Rash was plaintiff's bunkmate, although the
    inmates' designations on the April 2008 rules violation report, suggest that they may have been
    assigned to the same triple bunk.  *See* Majors Decl. Ex. E (referring to plaintiff with "HD-127-L"

26  and to inmate Rash with "HD-127-M").

Defendant Majors, a correctional sergeant, reviewed report S2-08-04-0771 regarding the April 2008 altercation to make sure that the information contained in the rules violation report matched the information contained in the incident report.  SUF 13.  As the rules report reviewer, Majors was also responsible for initially determining whether an inmate was entitled to a staff assistant or an investigative employee.  SUF 14.  Majors determined that plaintiff was not entitled to a staff assistant or an investigative employee based because: (1) plaintiff spoke English, was literate, and was educated enough to understand the nature of the proceedings and the charges; (2) the mutual combat charge was not complex to the point where he felt that plaintiff could not understand the nature of the charge; (3) the underlying incident report was extensive and complete with witness reports and photographs; and (4) plaintiff had no personal impediments to conducting his own investigation because he was in general population and lived in the same housing unit where the underlying incident took place.  SUF 15.

After Majors's review, he forwarded the rules violation report to the senior hearing officer, who made his own determination that plaintiff was not entitled to a staff assistant or an investigative employee.  SUF 16.  Plaintiff was subsequently found guilty of mutual combat.  SUF 17.

On May 15, 2008, plaintiff had another Unit Classification Committee hearing where Orum served as the recorder and Butler as the chairperson.  SUF 18.  At this hearing, plaintiff's classification score was increased to 33, due to the guilty finding in report S2-08-04-0771.  SUF 19.  This higher score made plaintiff ineligible for transfer to a level two housing unit.  SUF 20.  Therefore, the committee found that plaintiff's current housing was appropriate.  SUF 21.

## II.   Summary Judgment Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and [ ] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient

evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushit*a, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures.  Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue.  *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on

a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").  *Id*. at 324. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  *Id*. at 323.

        To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law, *id.*, which here involves an Eighth Amendment claim that the defendants deliberately disregarded plaintiff's safety by failing to remove him from level three housing in the gym, resulting in him being assaulted by level three inmates.  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 322.

        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit

or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See Anderson*, 477 U.S. at 249, 255;  *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. at 323.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

////

On February 22, 2010, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## III.   Discussion

### A.   Plaintiff's Claims Against Defendants Orum, Butler, Shea, Clarey, Orrick, Sisto, and Guillory

Plaintiff alleges that defendants Orum, Butler, Shea, Clarey, Orrick, Sisto, and Guillory violated his right to be free from cruel and unusual punishment by being deliberately indifferent to his safety needs when they failed to remove him from level three housing in the gym, resulting in him being assaulted by level three inmates in December 2007 and April 2008.

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. A prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show that the injury is sufficiently serious, *id.* at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)), and that the prison official was deliberately indifferent to the risk of harm, *id.* at 837. Thus, the relevant inquiry is whether prison officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Id.* at 834 (internal quotation omitted).

To be deliberately indifferent, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from

9

1  circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a

2  substantial risk from the very fact that the risk was obvious." *Id.* at 842.  The "obviousness of a

3  risk," however, is not conclusive, and "a prison official may demonstrate that the obvious

4  escaped him . . ." *Id.* at 843, n.8.

5       Here, plaintiff has failed to raise a disputed issue of material fact as to whether

6  defendants Orum, Butler, Shea, Clarey, Orrick, Sisto, or Guillory were deliberately indifferent to

7  the risk that plaintiff could be assaulted by another inmate.

8       Plaintiff's evidence establishes defendants Orrick and Shea were aware of the December

9  2007 attack and that Orrick separated plaintiff from the inmate who assaulted him.  Pl.'s Decl.

10  ¶ 5, Ex. 4.  This evidence does not show that Orrick or Shea knew that plaintiff was at risk to an

11  attack after this incident.

12       Plaintiff submits evidence that, prior to the April 2008 assault, he made Shea, Butler,

13  Orum and Clarey aware that he and his bunkmate were not compatible. *Id.* ¶ 2.  However,

14  plaintiff's vague complaints regarding incompatibility would not have made these defendants

15  aware of any substantial risk of serious harm to plaintiff's health.  There is no evidence that

16  plaintiff specifically informed defendants why he and his bunkmate were incompatible or that he

17  feared a physical attack from his bunkmate.

18       Plaintiff's evidence also shows that Orum, Butler and Sisto knew that plaintiff wanted to

19  be removed from level three housing.  In the citizen's complaint directed to Orum and Butler, it

20  is evident that plaintiff wanted to be moved out of level three housing and into level two

21  housing. *Id.*, Ex. 1.  Also evident is plaintiff's point that if he were not in level three housing, he

22  would not have been assaulted by a level three inmate. *Id.*  However, the complaint does not

23  convey the message that by remaining in level three housing, plaintiff was exposed to a

24  substantial risk of serious harm.  Additionally, plaintiff's evidence that he sent letters to Sisto

25  requesting that his housing status be changed does not show that plaintiff expressed any concern

26  for his safety in those letters. *See id.* ¶ 4, Ex. 3.  Plaintiff's preference for and requests to be

housed with level two inmates would not put defendants on notice of any threat of harm to plaintiff.

Plaintiff submits evidence that Butler reviewed his inmate appeal complaining that he was "under the gun" because of his housing situation. *Id.* ¶ 3, Ex. 2. There is no evidence that Butler would have determined from the cryptic statement that plaintiff feared a physical assault from another inmate or otherwise faced substantial risk of serious harm. When submitting this appeal to the second level of review, plaintiff added statements that he had been assaulted on December 12, 2007 and that he "now could be forced to fight to protect [himself]." *See id.*, Ex. 2. There is no evidence any defendant was aware of this statement. *See* Defs.' MSJ, Sisto Decl. ¶¶ 4-5, Ex. C. Even if there was, it would not have notified defendants that plaintiff's safety was in jeopardy, as the inmate who assaulted plaintiff in December had been re-housed in a different facility, and plaintiff did not identify any other specific threat to his safety.

Thus, it is undisputed that Orum, Butler, Shea, Clarey, Orrick, Sisto, and Guillory were not aware, prior to the December 2007 assault or the April 2008 assault, that plaintiff's safety was in jeopardy. No reasonable factfinder could conclude from plaintiff's evidence that these defendants were aware of facts from which they could infer that plaintiff was exposed to a risk of serious harm.

In addition, based on the undisputed facts and this record, no reasonable factfinder could conclude that these defendants actually did infer that plaintiff was exposed to a risk of serious harm. Rather, the declarations of these defendants show that they did not make such an inference. SUF 23, 25, 27; Defs.' MSJ, Butler Decl. ¶ 17, Orum Decl. ¶ 5. Plaintiff argues that a factfinder could conclude that defendants made the inference because the risk to plaintiff, a mental health patient, being housed in an overcrowded gym after already being assaulted once, was obvious. Pl.'s Decl. ¶ 1; Pl.'s P. & A. at 3, 5, 11-13. However, the undisputed facts show that the risk of plaintiff being assaulted was not obvious. Plaintiff offers no evidence regarding how his mental health status related to a risk of him being assaulted, and the inmate who

11

1   assaulted plaintiff in December of 2007 was re-housed.  Pl.'s Decl. Ex. 4.  Moreover, plaintiff

2   never informed any of the defendants that he felt that his bunkmate or any other inmate put his

3   safety in jeopardy.  While he requested to be removed from level three housing, this did not give

4   defendants any reason to suspect that he was in danger of violence from another inmate.

5          Thus, plaintiff has failed to raise a triable issue of material fact that defendants Orum,

6   Butler, Shea, Clarey, Orrick, Sisto, or Guillory were deliberately indifferent to the risk that he

7   would be attacked by another inmate, and summary judgment should be granted in their favors.

8   *Anderson v. Liberty Lobby, Inc*., 477 U.S. at 248, 252

9          **B.     Plaintiff's Claim Against Defendant Majors**

10         Plaintiff claims defendant Majors violated his Fourteenth Amendment right to due

11  process by failing to assign a staff assistant of investigative employee to assist plaintiff in the

12  disciplinary proceedings regarding the April 2008 rules violation report.

13         The Due Process Clause of the Fourteenth Amendment protects prisoners from being

14  deprived of liberty without due process of law.  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

15  However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full

16  panoply of rights due a defendant in such proceedings does not apply."  *Id.*  In a disciplinary

17  proceeding where a liberty interest is at stake, due process requires that "some evidence" support

18  the disciplinary decision, and that the inmate receive: "(1) advance written notice of the

19  disciplinary charges; (2) an opportunity, when consistent with institutional safety and

20  correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a

21  written statement by the factfinder of the evidence relied on and the reasons for the disciplinary

22  action."  *Superintendent v. Hill*, 472 U.S. 445, 454, 455 (1985) (citing *Wolff*, 418 U.S. at

23  563-67).  Where an inmate is illiterate or the facts of the case are complex, he may be entitled to

24  seek the aid of a fellow inmate or staff.  *Wolff*, 418 U.S. at 570.

25         It is undisputed that the mutual combat charge was not complex and that plaintiff is not

26  illiterate.  SUF 15.  It is also undisputed that Majors determined that plaintiff was able to

understand the nature of the proceedings and the charge against him.  SUF 15.  Plaintiff attempts

to raise a triable issue as to this claim on the ground that he was a participant in the Mental

Health Services Delivery System and was on a related medication.  Pl.'s Decl. ¶ 1; Pl.'s P. & A.

at 2, 4, 9-10.  Plaintiff does not submit any evidence regarding how this affected his ability

defend himself against the mutual combat charge.  Due process does not require that all mental

health patients be provided with assistance in disciplinary proceedings and plaintiff fails to show

why his status as a mental health patient required it here.

Thus, plaintiff has failed to raise a triable issue of material fact that defendant Majors

violated his right to due process by denying him an investigative employee or staff assistant, and

summary judgment should be granted in Majors' favor.

### C.      Qualified Immunity

For the reasons discussed above, the court concludes that defendants are entitled to

summary judgment on plaintiff's claims.  Therefore, the court need not address defendants'

argument for qualified immunity.

## IV.    Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Defendants' January 18, 2011 motion for summary judgment be granted;

2. The Clerk be directed to enter judgment in defendants' favors; and

3. The Clerk be directed to close this case.

These findings and recommendations are submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

after being served with these findings and recommendations, any party may file written

objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

////

////

within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

14